IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PHILIP J. FEINER, JR.,

    Plaintiff,

v.

CITY OF AMERICAN CANYON, JAMES CANNON, ROBERT PONTELLE, MARK JOSEPH, ROBERT SCHWERIN, and DOES 1 through 25, inclusive,

    Defendants.
_____/

No. C 3:04-cv-04472 WHA

**ORDER ON RECONSIDERATION**

    The Court regrets to say that it made a mistake in connection with its partial summary-judgment order dated March 8, 2005. Were the record as the Court then understood it to be, no change would be necessary. But a recent argument on a related motion, heard during the pendency of the city's motion for reconsideration, has illuminated the earlier record more clearly.

    Specifically, the Court was under the impression that the default judgment by the state court had only authorized the city to "abate" the nuisance and had not indicated that the term included removing the hedge altogether. Based on that view of the record, the March 8 order stated in part:

> A default judgment issued on March 4, 2003. Although it authorized the city to "abate" the nuisance, the order did not state that the city could cut the hedge down all the way to the ground (*id*. at 2).

\*    \*    \*

> This order holds that the state-court order, while authorizing the city to "abate" the nuisance, did not authorize abatement measures beyond those reasonably necessary to bring the hedge into compliance (*ibid*.).
>
> \* \* \*
>
> The state-court order could only have authorized the seizure if it satisfied the requirements for a valid warrant. . . . Even if the state-court order, as far as it went, satisfied the warrant requirement, the act of razing the hedges and spraying sealant on the roots unreasonably exceeded the scope of the order (*id*. at 5).
>
> \* \* \*
>
> The evidence presented to the state court concerned only the zoning ordinance and the 41-inch limit. Nothing was presented in opposition to the instant motion indicating that the state court meant the word "abate" to include the draconian action subsequently taken (*id*. at 5–6).

On closer examination, however, the undersigned must frankly acknowledge that he overlooked language in the state-court default judgment, as follows:

> 3. City is authorized to abate any nuisance on Defendant's Property, including but not limited to overgrown hedges which obstruct and/or impair vehicular sight lines, if Defendant fails to abate any such nuisances within the time requested by City; and
>
> 4. Defendant shall pay all costs incurred by City in *abating Defendant's nuisances and trimming or removing the hedge*, if City is required to do so as a result of Defendant's failure to do so as ordered by the Court . . . .

While it remains true that paragraph 3 only authorized abatement, the italicized language in paragraph 4 did tend to indicate, contrary to the March 8 order, that the state court used the word abate to include "removing." It was wrong, therefore, for the order to grant partial summary judgment against the city as to the hedge-removal aspect of the action. The state-court order could have been understood to include the complete razing of the hedge, contrary to the March 8 order. This does not, of course, mean that summary judgment is now granted in favor of the city on that issue. It only means that the previous order must be vacated as to the hedge-removal part of the order. Further proceedings will continue as to that issue.

The March 8 order, however, was correct in stating that herbicide was not authorized by the state-court order. Nothing in the state-court order hinted that pouring herbicide on the hedge

1  stumps to prevent regrowth was contemplated.  That feature of the city's action was added later
2  by the city employees after the state-court order issued.  For *Monell* purposes, however, a further
3  modification of the March 8 order was required, a modification best considered after the
4  following discussion.

5                              *       *       *

6        The city also seeks reconsideration of the *Monell* holding, *i.e.*, that the city is liable by
7  reason of City Attorney Pontelle's actions.  Admittedly, there was a procedural irregularity in the
8  way the *Monell* issue developed.  Plaintiff did not raise the *Monell* issue regarding municipal
9  liability in his initial motion for summary judgment.  He should have, but *Monell* was not even
10 mentioned.  This was largely cured, however, when defendants recognized and addressed the
11 issue in their opposition brief.  In reply, however, plaintiff pointed to the actions of Mr. Pontelle
12 as the source of *Monell* liability and surfaced the municipal code for the first time, appending the
13 municipal code in its reply submission.  On the briefing, therefore, defendant American Canyon
14 did not have a fair opportunity to oppose the reply argument.  At the hearing, of course, defense
15 counsel had every opportunity to address the point but chose not to do so.  But the original sin
16 was by plaintiff in neglecting to lay the *Monell* issue out in his opening submission.  In balancing
17 the comparative faults for this procedural anomaly, the Court will now reconsider the arguments
18 that would have been made had both parties done it right.
19       The city argues that Mr. Pontelle could not be considered a decision-maker with final
20 policy-making authority because he was only a *deputy* city attorney.  In its own earlier briefing,
21 the city itself referred repeatedly to Mr. Pontelle as "the City Attorney."  At no point did the city
22 claim he was anything less than the City Attorney.  The Court can be forgiven for having taken
23 counsel at his word and for now being disappointed that counsel said nothing at the first hearing.
24       The new facts now indicate that Mr. Pontelle was an associate in a law firm hired by
25 American Canyon as its City Attorney.  Counsel now refer to him as a deputy city attorney.
26 Mr. Pontelle proposed legal opinions, suggestions and advice to city employees but had no
27 supervisorial authority.  Significantly, no new declarations purport to rebut the basic facts of
28 what Mr. Pontelle did; the new facts concern only the scope of his authority.

3

The new facts do not overcome the legal force of American Canyon's own municipal code. As noted in the March 8 order, Chapter 2.20 of the American Canyon Municipal Code specifically stated that "references in this chapter to city attorney or the office of city attorney will include any applicable law firm and performance of the functions by *any* of its members or *employed* attorneys." Mun. Code § 20.010 (C) (emphasis added). The Office of the City Attorney was empowered to "Prosecute on behalf of the people cases for violation of city ordinances," and to "perform such other legal duties as may . . . be necessary to complete the performance of the foregoing functions." Mun. Code § 2.20.030 (D–E). Under the municipal code, the title "City Attorney" therefore applied to all attorneys within the law firm, which is probably why defense counsel referred to Mr. Pontelle as such. The prosecution and enforcement of city ordinances were specifically enumerated functions of that office. *Ibid.*

As an attorney in the law firm which had been contracted by the city to fulfill the duties of the office of the city attorney, Mr. Pontelle was acting within the stated authority of that office under the municipal code. Mr. Pontelle's position as the prosecutor of the zoning case and his approval of the abatement plan was the type of policy-making position giving rise to municipal liability under *Monell*.

Plaintiff previously identified several decisions holding that the actions of *deputy* state, county, and district attorneys can give rise to municipal liability. *See Webb v. Sloan*, 330 F.3d 1158, 1166 (9th Cir. 2003); *see also Lytle v. Carl*, 382 F.3d 978 (9th Cir. 2004). The city has made no attempt to rebut these authorities. In each case, the actions of a deputy or assistant were held sufficient to establish municipal liability because the officer had the specifically-granted authority in a particular area or on a particular issue. The fact that a deputy was supervised by a superior or shared authority did not negate the fact that the officer was a decision-maker who had final policy-making authority. Here, the authority to prosecute and enforce city ordinances was specifically granted to the Office of the City Attorney and could be enforced by any attorney in a

1  law firm hired as its City Attorney.  Accordingly, Mr. Pontelle was properly considered a
2  decision-maker with final policy-making authority for the purposes of municipal liability.[*]

           *       *       *

4  Even though the March 8 order was correct concerning Mr. Pontelle's *Monell* status, now
5  that the "removal" issue has been withdrawn from summary judgment, the question arises
6  whether the "herbicide" issue must be withdrawn as well.  The Court has reviewed the factual
7  record again.  The problem is that it does not establish that Mr. Pontelle approved or ratified the
8  herbicide application.  The internal city records that discussed the herbicide idea were not sent to
9  Mr. Pontelle, according to his declaration.  Thus, for example, even though the state-court order
10 did not authorize the application of the herbicide and even though in theory Mr. Pontelle had the
11 authority to approve its use for *Monell* purposes, the summary-judgment record fails to establish
12 that he did so.  In his reply brief, plaintiff relied solely on Mr. Pontelle and his role in the
13 City Attorney's office to establish *Monell* liability.  No reliance was placed on the potential
14 policy-making roles of the other city employees involved.  Consequently, the partial summary
15 judgment against the city must be **VACATED**.  We will leave to another day with a more
16 complete record the issue of whether Mr. Pontelle (or any other policy maker) approved or
17 ratified the herbicide.  *Monell* liability against the city has not yet, therefore, been established as
18 to any aspect of its employees' conduct.

20 **IT IS SO ORDERED.**

22 Dated:  May 2, 2005.                        S/ WILLIAM ALSUP
                                              WILLIAM ALSUP
23                                            UNITED STATES DISTRICT JUDGE

---

[*] *Christie v. Iopa*, 176 F.3d 1231 (9th. Cir. 1999), does not aid the city.  *Christie* involved a different statutory scheme under which Hawaiian law did not delegate final policy-making authority to deputy district attorneys.  Here, the municipal code explicitly defined the Office of the City Attorney as equally inclusive of all attorneys within a contracted law firm.

5